**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**THOMAS L. HODGES**                                                               **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO.  3:14CV632 HTW-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                    **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Thomas Hodges appeals the final decision denying his application for supplemental security income ("SSI").  The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge.  Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed for the reasons that follow.

On February 25, 2011, Hodges filed an application for SSI alleging that he became disabled on December 28, 2010, due to degenerative disc disease, seizures, arthritis, post-traumatic stress disorder, depression, sleep apnea, memory problems due to a head injury, and pain in his back, neck, shoulder, and knee.  He is a high school graduate and was approximately 51 years old at the time of filing, with previous work experience as an electrician's helper, carpenter, and chemical mixer.  Following agency denials of his application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that he had not established a disability within the meaning of the Social Security

Act. The Appeals Council denied Plaintiff's request for review. He now appeals that decision.

After reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 25, 2011.[2] At steps two and three, the ALJ found that although Plaintiff's degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, seizure disorder, and depression were severe, none of these impairments met or medically equaled any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work except:

> [H]e needs to alternate sitting, standing, and walking. He can sit for unlimited periods. He can walk and stand for 30 minutes before needing to sit. He can stand and walk a total of four hours in an eight-hour workday. He cannot perform job task[s] that require climbing ladders, ropes, or scaffolds or climbing more than five steps of ramps or stairs at a time. He can occasionally balance, stoop, kneel, and crouch. He cannot crawl. In addition, he is limited to simple routine repetitive type work, and he should work more with objects rather than people.[3]

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2] ECF No. 6, p. 17.

[3] ECF No. 6, p. 19.

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, he could perform work as a tagger, mail-room clerk, and visual inspector.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d at 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff argues that the ALJ's decision should be reversed because the ALJ: (1) failed to consider all of his impairments at step three; (2) improperly assessed his residual functional capacity at step four; and, (3) failed to find that he was disabled pursuant to the Medical-Vocational Guidelines at step five. The Court rejects these arguments as explained below.

### 1. Substantial evidence supports the ALJ's step-three finding.

Plaintiff's central argument in his first assignment of error is that the ALJ failed to consider whether his musculoskeletal impairments met or medically equaled Listings 1.02 (A) and 1.04 (A) or (C), despite finding that his degenerative disc disease of the lumbar spine and degenerative joint disease of the right knee were medically severe at step two. 20 C.F.R. Part 404, Subpt. P, App 1.  This is particularly troubling, Plaintiff argues, given the ALJ's comments at the administrative hearing suggesting that he would meet the listings if he provided the requisite medical basis to substantiate his claims that he needed a wheelchair or other assistive device.[4]  Plaintiff points out that he did precisely that by producing records from the Veterans Administration Medical Center ("VAMC") showing that his physical therapist's request for a wheelchair was granted in December 2009 for his hip arthritis.[5]

Although an ALJ has a duty to analyze a claimant's impairments under every applicable Listing, an ALJ's failure to consider a specific Listing is harmless if the record shows such Listing is not met.  *Bordelon v. Astrue*, 281 F. App'x 418 (5th Cir. 2008).  "An impairment that manifests only some [Listing] criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  Thus, to warrant relief, Plaintiff must show that his musculoskeletal conditions satisfied all the criteria for

---

[4]The undersigned notes that counsel appeared to argue that Plaintiff would not meet these listings at the administrative hearing.  ECF No. 6, pp. 164-65.

[5]ECF No. 6, pp. 959-965.

Listings 1.02(A) and 1.04 (A) or (C).

Listing 1.02 requires that a claimant exhibit major dysfunction of a joint(s) due to any cause:

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). . . .[w]ith. . .
>
> A.   Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;[6] . . . .

Listing 1.04 requires a claimant, in relevant part, to have a spinal disorder, such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture, which results in the compromise of a nerve root or the spinal cord, with:

> A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test

---

[6] Listing 1.00B2b(1) provides the following definition: "[i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Part 404, Subpt. P, App 1.

5

>   (sitting and supine);

>  or

>  C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpt. P, App 1.

In the present case, the evidence documents Plaintiff's diagnoses and treatment for spinal and joint disorders, i.e., degenerative disc disease and bilateral knee osteoarthrosis. But Plaintiff does not point to any medical evidence showing that he satisfies other Listing criteria, nor does he rebut the Commissioner's argument that not all criteria are met. Medical findings showing that Listing criteria were present on an intermittent basis is insufficient. *See Wyre v. Commissioner of Social Sec. Admin.*, No. 13-201-JWD-RLB, 2015 WL 589738, at *6 (M.D. La. Feb. 11, 2015) (intermittent and inconsistent medical findings are insufficient to satisfy Listing 1.04(A); *Lawson v. Astrue*, No. 2:09-CV-00022, 2010 WL 1375171, at *4 (W.D.Va. April 5, 2010) (finding that while claimant had exhibited all of the criteria of § 1.04 (A) at one time or another, she failed to exhibit all of criteria consistently or contemporaneously); *Ortiz v. Astrue*, No. 12-11359-RGS, 2013 WL 772677, at *4 (D. Mass. Feb.27, 2013) (finding that Listing 1.04 (A) was not met because claimant failed to "demonstrate positive straight leg raise test results for a continuous twelve month period").

Plaintiff contends simply that the ALJ disregarded evidence that he had an inability to ambulate effectively on a sustained basis.[7] But a reading of the hearing transcript reflects that the ALJ discussed the matter at length. The ALJ referenced medical records showing that although Plaintiff arrived at his examination in a wheelchair, he "was encouraged [by his examining physician] to walk and complete exercises for low back pain as recommended by the physical therapist." The ALJ also noted that Plaintiff reported that he was independent in his daily activities during his medical examinations. "[H]e goes out and about unsupervised, he goes to church, he shops, he fishes, [and] he visits with friends." The ALJ also questioned whether Plaintiff was medically required to use an assistive device as there was no evidence that one had ever been prescribed by an examining or treating physician.[8]

Further, although the ALJ failed to examine whether Plaintiff's musculoskeletal condition met the Listings at step 3, he directly addressed Plaintiff's wheelchair use and his ability to ambulate in assessing his residual functional capacity. *See Reynolds v. Astrue*, No. 1:08CV228-SSA, 2010 WL 583918 (N.D. Miss. 2010) (quotation omitted)

---

[7]The regulations explain that "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.002B2b(2). The regulations further provide that "examples of ineffective ambulation include ... the inability to walk without the use of a walker, two crutches or two canes, [and] the inability to walk a block at a reasonable pace on rough or uneven surfaces." *Id.* Finally, the regulations note that "[t]he ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." *Id.*

[8]ECF No. 6, pp. 126-27, 134-35.

7

(an ALJ's failure to detail findings at step 3, "does not necessarily require reversal as long as the ALJ makes factually supported findings at Steps 4 and 5 which eliminate 'any concern that a claimant might have been adjudged at Step 3'"). Specifically, the ALJ made the following observations:

> The claimant does have degenerative disc disease of the lumbar spine, characterized as mild on his most recent imaging in May 2011. Although the claimant sometimes uses a wheelchair to ambulate, in review of the medical record, the claimant was prescribed the wheelchair in December 2009 for arthritis in the hip. Interestingly, the claimant does not allege this as a disabling impairment, and consistent treatment for hip arthritis is not shown.
>
> . . . . Examination findings are shown in the orthopedic evaluation in November 2009, by Dr. Samuel Richardson in connection with his VA pension and compensation exam. At that time, the claimant stated he needed assistance putting on pants and jackets, used a cane at all times, and used a wheelchair when in the hospital. The claimant added that he needed other assistive devices such as a sock-aid, a reach-extender, a long-handle shoehorn and a shower-stool, but related *he did all activities of daily living without assistance* and never had back surgery. On exam, the spine had a normal appearance. The claimant was very tender to palpation at L5 and had positive bilateral straight-leg raising. The claimant's cervical spine was also tender to palpation. The claimant had extremely limited flexion and extension (from 0-12 degrees) and rotation (from 0-34 degrees). *Dr. Richardson, however, noted that it was "impossible to distinguish whether this (reduced ranges of motion) was subjective or objective because of the constant complaint of pain the Veteran made."* The neurological exam revealed 4/5 motor function in the lower extremities. Sensory examination was intact and deep tendon reflexes were generally depressed. *Dr. Richardson noted, "Please bear in mind that the Veteran states that he can go outside the house under his own power with a walking cane and go fishing. However meager that activity is, it is not consistent with the fact that he is unable to do any forward flexion at all, and unable to walk unassisted during this examination.* Dr. Richardson further stated that he could not state "without undue speculation whether or not the veteran can do his most recent job as an electrician. The objective data to prove that he

8

cannot do that job is lacking in regard to his spine problem." [9]

Given Dr. Richardson's findings, there is a reasonable basis for questioning the reliability of Plaintiff's ambulatory claims.  Even assuming that he met the ambulatory criteria of the listings, Plaintiff has not shown that he met the other criteria.  Absent such a showing, Plaintiff fails to demonstrate that his rights were substantially affected by the ALJ's failure to consider whether his impairments met or equaled Listings 1.02 and 1.04. *Bowen v. Yuckert*, 482 U.S. 137, 145–52 (1987) (burden is on claimant to produce evidence that his impairment meets a Listing).

Next, Plaintiff argues that the ALJ also erred at step three in evaluating whether his mental impairments met or medically equaled Listing 12.04.  In that vein, he broadly asserts that the ALJ failed to consider his Generalized Anxiety Disorder and Cluster B Personality Features, as diagnosed during his inpatient hospitalization in February 2011.  He contends the ALJ relied only on the evidence supporting an unfavorable decision instead.  *Loza* v. *Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

To meet Listing 12.04, Plaintiff must demonstrate medically documented persistence of the affective disorder resulting in marked restrictions in two of the following areas:  activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; or, repeated episodes of decompensation of extended duration (defined as lasting at least two weeks).  In reviewing the record, the ALJ

---

[9]ECF No. 6, pp. 21-22 (emphasis added).

concluded that Plaintiff's mental impairments did not meet or medically equal Listing 12.04, as he had only moderate limitations in social functioning and concentration, persistence and pace, and was only mildly limited in his activities of daily living with no episodes of decompensation. Substantial evidence supports this finding.

Orthopedic records indicated that Plaintiff was independent in all his daily activities. His consultative psychological examination revealed that he shopped, attended church, and occasionally drove, though he later testified that he had not driven in a year. His remote recall and arithmetic were also found to be adequate. Although the ALJ did not specifically discuss Plaintiff's anxiety disorder or Cluster B personality traits, he cited VAMC hospitalization records showing Plaintiff was admitted for anger issues in February 2011, and discharged three days later with improvement.[10]

The ALJ also gave due consideration to the examination findings of consulting psychologist, Dr. Jan Boggs, but he assigned little weight to his conclusions that Plaintiff's difficulties relating to others "could carry over to work situations," or that his pain "may be such a distraction that he would have difficulty sustaining tasks." The ALJ noted that Dr. Boggs was not a treating physician, and appears to have "relied heavily on the subjective report of symptoms and limitations provided by the claimant" in reaching this conclusion. As a consulting examiner, Dr. Boggs's opinion is "not accorded the controlling weight given to treating physicians." *Hernandez v. Astrue*, 278 F. App'x 333,

---

[10] ECF No. 6, pp. 407-09, 465-85, 516-19.

338 (5th Cir. 2008). Further, Dr. Boggs had diagnosed Plaintiff with pain, depression, anxiety disorders, history of alcohol dependence, and poly-drug abuse in May 2011. Treatment records from VAMC reflect that over the course of the next year, Plaintiff's symptoms improved. By October 2012, his Major Depression Disorder was in partial remission and he was assigned a GAF of 60, indicating he had only moderate symptoms.[11]

The ALJ assigned significant weight instead to the non-examining psychologist who opined that Plaintiff was "capable of understanding and remembering simple instructions and carrying out these tasks; concentrating and attending for two-hour periods; interacting with supervisors and co-workers at a very basic level; and, adapting adequately in order to complete a normal work week without excessive interruptions from psychologically-based symptoms." Although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject any opinion, in whole or in part, when good cause is shown, i.e., when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995). The ALJ had good cause for assigning less than significant weight to Dr. Boggs's conclusions as they were not consistent with the evidence as a whole. Even if the Court were to find that the ALJ erred as Plaintiff argues, he fails to establish that his

---

[11]ECF No. 6, pp. 21-23, 516-19, 913-57.

mental impairments imposed limitations greater than those assigned by the ALJ. [12]

For the reasons stated, substantial evidence supports the ALJ's step-three finding that Plaintiff's impairments did not meet or equal the Listings.

### 2. Substantial evidence supports the ALJ's residual functional capacity assessment.

In his second assignment of error, Plaintiff argues the ALJ's residual functional capacity assessment is deficient for three reasons: the ALJ failed to quantify the frequency or duration that he would have to sit before being able to stand and/or walk; the ALJ failed to account for his cane and wheelchair use; and, the ALJ failed to obtain a medical source statement from a treating or examining physician. These arguments are unavailing. The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ, and there is substantial evidence to support the ALJ's residual functional capacity determination in this case. 20 C.F.R. § 404.1546 (c) (2010).

As noted *supra*, the ALJ found, in relevant part, that Plaintiff has the residual functional capacity to perform light work, provided that he alternates sitting, standing, and walking. He can also sit for unlimited periods, and walk up to four hours in an eight-hour workday. Plaintiff maintains, however, that if he can sit for unlimited periods but has limitations on his ability to stand or walk, his residual functional capacity places him in a sedentary range, mandating a non-disability finding under the Medical-Vocational Rules.

---

[12]*Id.* at 22-23, 536-53.

The inability to perform the full range of light work does not mean that Plaintiff is disabled or only capable of performing sedentary work. *Conaway v. Astrue*, No. 3:07CV906 - BD, 2008 WL 4865549, at *4 (N.D. Tex. Nov. 10, 2008). Social Security rulings provide that where a Plaintiff's residual functional capacity does not precisely coincide with the exertional criteria of sedentary or light work, the ALJ should consult a vocational expert. SSR 83-12, 1983 WL 31253, at *2. That is what the ALJ did in this case. The ALJ posed hypotheticals to the vocational expert inquiring whether jobs existed in significant numbers that Plaintiff could perform given only the limitations of his residual functional capacity. The vocational expert testified that he could perform work as a tagger, mail-room clerk, and visual inspector. Unlike the D.O.T., which gives only general descriptions of job duties, a "vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion [as to] whether the claimant can perform the specific job." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

Plaintiff's ancillary argument that the ALJ failed to account for his cane and wheelchair use is similarly unavailing. An ALJ's residual functional capacity assessment and corresponding hypothetical need only incorporate the limitations recognized by the ALJ. *Bowling*, 36 F.3d at 436. Here, the ALJ acknowledged that Plaintiff claimed to need a wheelchair and cane, but reasonably concluded that his allegations regarding his limitations were not entirely credible. VAMC records confirm that Plaintiff received a wheelchair at the request of his physical therapist for hip arthritis, but as noted by the ALJ,

Plaintiff had not alleged it as a disabling impairment, nor received consistent treatment for a hip condition. Also, new evidence submitted for the Appeals Council's consideration reveals that Plaintiff made a follow-up request for a motorized wheelchair "due to severe degenerative joint disease involving the knees, hips, and shoulders," but the request was denied. And, although Plaintiff's treating sources noted his cane use during examinations, there is no prescription of record. Rather, his examining orthopedist noted that Plaintiff's inability to perform any forward flexion, or walk unassisted was inconsistent with his reported activity.[13]

Lastly, Plaintiff asserts that the ALJ's residual functional capacity assessment was defective because it was not based on a medical source statement from an examining or treating physician. In support, Plaintiff re-urges that the ALJ erred in giving little weight to Dr. Boggs's conclusions that he would have difficulty relating to others or sustaining tasks. He also contends the ALJ erred in relying on the only medical source opinion regarding his physical limitations because it was completed by a state agency physician five months after his benefits application was filed.

The Fifth Circuit has explained that although the absence of a medical source statement does not render the record incomplete, the ALJ should usually "request a medical source statement describing the types of work that the applicant is still capable of performing." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). That is what occurred

---

[13]ECF No. 6, pp. 409, 959-64. Assuming *arguendo* that the evidence establishes that Plaintiff has a medical need for a cane or wheelchair, Plaintiff fails to explain how his substantial rights were affected given that his residual functional capacity allows for unlimited sitting.

14

here.  The ALJ did not reach a residual functional capacity assessment based on his lay interpretation of the medical evidence.  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).  The ALJ's assessment is substantially supported by the opinions of state agency consultants and the evidence as a whole.

For example, for reasons already stated, the ALJ did not err in giving little weight to Dr. Boggs's opinion that Plaintiff's mental impairments imposed greater limitations than those assigned by the ALJ.  Similarly, the ALJ did not err by declining to give controlling weight to the assessment submitted by a state medical consultant who opined that Plaintiff had the exertional capacity to perform a range of light work, with only some occasional postural limitations.  *See e.g., Onishea v. Barnhart*, 116 F.App'x. 1 (5th Cir. 2004) (ALJ may rely on a state consultant's function-by-function assessment of a claimant's exertional limitations when determining residual functional capacity).  The evidence as a whole, warranted a more restrictive residual functional capacity assessment.  To the extent Plaintiff contends the ALJ was required to obtain an updated medical opinion, this duty is triggered when the evidence is insufficient to make an informed decision, not a favorable one.  *Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 805 (E.D. Tex. 2006).

In this case, the MRI of Plaintiff's lumbar spine performed in February 2009 showed mild multi-level degenerative disc disease with no significant stenosis.  X-rays of both knees in October 2010 revealed similar degenerative changes.  An orthopedic evaluation conducted in November 2009 revealed Plaintiff had a tender cervical spine and

positive bilateral straight-leg raising with extremely limited flexion, extension, and rotation, but it was impossible to distinguish whether the reduced ranges of motion were "subjective or objective because of [the] constant complaint of pain the Veteran made." A comprehensive evaluation performed in May 2011 similarly revealed that Plaintiff experienced pain and muscle spasms on examination, but he had a full range of motion in his low back, hips, and knees. Given the evidence, the ALJ reasonably concluded that "the record did not demonstrate clearly that he has the significantly limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, or reflex abnormalities that are associated with intense and disabling pain." When a claimant's statements concerning the intensity, persistence or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). The ALJ's credibility findings are entitled to considerable deference and should not be disturbed here.[14]

### 3. Substantial evidence supports the ALJ's step-five finding.

As his final point of error, Plaintiff claims the ALJ erred at step five in failing to find that he was disabled pursuant to the Medical-Vocational Guidelines ("Grid Rules"). 20 C.F.R. Pt. 404, Supt. P, App. 2. Specifically, Plaintiff argues that had the ALJ limited him to sedentary work, he would have been found disabled pursuant to Grid Rule 201.12 or 201.14. Plaintiff's cites to *Bolton v. Callahan*, 984 F. Supp. 510 (N.D. Tex. 1997), and argues that like the claimant in *Bolton*, the exertional limitations found by the ALJ

---

[14]ECF No. 9, pp. 22, 358-68, 407-10, 504-05.

"factually" place him in the sedentary work category, and the ALJ erred in relying on vocational expert testimony at step five.

Use of the Grid Rules "is only appropriate 'when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity.'" *Watson v. Barnhart*, 288 F.3d 212, 216 (5th Cir. 2002) (quoting *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999)). "If, however, the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy." *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000). "An ALJ's finding of a severe nonexertional impairment at step two precludes the ALJ from relying solely on the Grid Rules at step five." *White v. Astrue*, 239 F. App'x. 71, 73- 74 (5th Cir. 2007) (emphasis added). Unlike the claimant in *Bolton*, Plaintiff's depression was found to be a severe nonexertional impairment at step two. *Harris v. Barnhart*, 204 F. App'x. 447, 449 (5th Cir. 2006). Accordingly, "not only was the ALJ within his discretion to rely on the [vocational expert], but he was required to do so."

In sum, the undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the

Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 2nd day of February 2016.

                                                             /s/ Linda R. Anderson
                                            UNITED STATES MAGISTRATE JUDGE